1
2
3
4                    UNITED STATES DISTRICT COURT
5                  EASTERN DISTRICT OF CALIFORNIA
6

| United States of America, | 1:07-cr-00332-OWW |
|---|---|
| Plaintiff, | MEMORANDUM DECISION AND ORDER RE DEFENDANT'S AMENDED MOTION TO DISMISS INDICTMENT |
| v. | |
| Stephen Douglas Keleher, | |
| Defendant. | |

12              **I.    INTRODUCTION**

13         A federal grand jury returned a superceding indictment

14   charging that defendant Stephen Douglas Keleher, "an individual

15   required to register under the Sex Offender Registration and

16   Notification Act, traveled in interstate commerce" and knowingly

17   failed to update his registration in violation of Title 18, United

18   States Code, Section 2250(a).  An individual who violates this

19   section is subject to being "fined . . . or imprisoned not more

20   than 10 years, or both." 18 U.S.C. § 2250(a).

21         Before the court is defendant's amended motion to dismiss the

22   superceding indictment pursuant to Federal Rule of Criminal

23   Procedure 12(b).  Defendant raises several challenges, mostly on

24   constitutional grounds, to the Sex Offender Registration and

25   Notification Act ("SORNA")[1] and the new federal offense, 18 U.S.C.

26   § 2250(a), which it created.  With few exceptions, defendant's

27

28         [1]   Codified at 42 U.S.C. §§ 16901-16991.

                              1

arguments, and various permutations of them, have been rejected in numerous courts across the country. *See, e.g., United States v. May, 535 F.3d 912 (8th Cir. 2008); United States v. Crum, No. CR08-255RSL, 2008 WL 4542408 (W.D. Wash. Oct. 8, 2008); United States v. Vardaro*, 575 F. Supp. 2d 1179 (D. Mont. 2008).  For the reasons set forth below, defendant's motion is denied.

## II.  BACKGROUND

### A.  Statutory Background

#### 1. The Jacob Wetterling Act – 1994

In 1994, Congress passed the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, 42 U.S.C. § 14071 (the "Jacob Wetterling Act").  This Act "condition[ed] certain federal law enforcement funding on the States' adoption of sex offender registration laws and set[] minimum standards for state programs." *Smith v. Doe*, 538 U.S. 84, 89-90 (2003).  By 1996, every state enacted some version of these registration laws, commonly referred to as "Megan's Laws." *Id.* at 90.  For compliance purposes, the "Jacob Wetterling Act [generally] relied on the states to enforce provisions of their sex offender registration mandates." *United States v. Stevens*, __ F. Supp. 2d __, __, 2008 WL 4335725, at *4 (D. Me. Sept. 19, 2008).

#### 2. The Adam Walsh Act & SORNA – 2006

On July 27, 2006, Congress passed the Adam Walsh Child Protection and Safety Act of 2006 (the "Adam Walsh Act").  SORNA, which is Title I of the Adam Walsh Act, seeks to "protect the public from sex offenders and offenders against children." 42 U.S.C. § 16901.  To that end, SORNA "establishes a comprehensive national system for the registration of those offenders." *Id*.  SORNA

essentially represents "an effort by Congress to close the loopholes in previous sex offender registration legislation and to standardize registration across the states." *United States v. Ditomasso*, 552 F. Supp. 2d 233, 236 (D.R.I. 2008).

To achieve its national objectives, SORNA envisions a coordinated effort between states and the federal government. Under SORNA, each jurisdiction must "maintain a sex offender registry that complies with SORNA's specifications," *United States v. Byun*, 539 F.3d 982, 984 (9th Cir. 2008), or they will lose part of their federal funding, 42 U.S.C. § 16925.   Information from these registries must be placed on publically searchable, state operated Internet sites. *See* 42 U.S.C. § 16918.   In turn, information from these registries will help form the basis of a national registry and a publically searchable, national Internet site, both of which the Attorney General is directed to maintain. *See id*. §§ 16919, 16920.

On an individual level, SORNA requires a "sex offender" to register and keep his or her registration current in relevant jurisdictions. *See id.* § 16913(a).  A "sex offender" is defined as an "individual who was convicted of a sex offense." *Id.* § 16911(1). The section in SORNA containing the registration requirements reads:

(a) In general

A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.

(b) Initial registration

The sex offender shall initially register--

(1) before completing a sentence of imprisonment with

**3**

respect to the offense giving rise to the registration
requirement; or

(2) not later than 3 business days after being sentenced
for that offense, if the sex offender is not sentenced to
a term of imprisonment.

(c) Keeping the registration current

A sex offender shall, not later than 3 business days
after each change of name, residence, employment, or
student status, appear in person in at least 1
jurisdiction involved pursuant to subsection (a) of this
section and inform that jurisdiction of all changes in
the information required for that offender in the sex
offender registry. That jurisdiction shall immediately
provide that information to all other jurisdictions in
which the offender is required to register.

(d) Initial registration of sex offenders unable to
comply with subsection (b) of this section

The Attorney General shall have the authority to specify
the applicability of the requirements of this subchapter
to sex offenders convicted before July 27, 2006 or its
implementation in a particular jurisdiction, and to
prescribe rules for the registration of any such sex
offenders and for other categories of sex offenders who
are unable to comply with subsection (b) of this section.

(e) State penalty for failure to comply

Each jurisdiction, other than a Federally recognized
Indian tribe, shall provide a criminal penalty that
includes a maximum term of imprisonment that is greater
than 1 year for the failure of a sex offender to comply
with the requirements of this subchapter.[2]

*Id.* § 16913(a)-(e). As § 16913(e) reveals, much like the Jacob
Wetterling Act, SORNA will rely upon states to enforce registration
failures. However, assistance from federal authorities will be
available. *See id*. § 16941(a) (directing the Attorney General to

---

[2] Pursuant to § 16913(d), on February 28, 2007, the Attorney
General issued an interim rule, which provides that "[t]he
requirements of [SORNA] apply to all sex offenders, including sex
offenders convicted of the offense for which registration is
required prior to the enactment of that Act." 28 C.F.R. § 72.3.

4

"use the resources of Federal law enforcement, including the United States Marshals Service, to assist jurisdictions in locating and apprehending sex offenders who violate sex offender registration requirements").

In addition to state-level enforcement, SORNA created[3] a federal criminal provision appearing at 18 U.S.C. § 2250. That provision reads:

> (a) In general.--Whoever--
>
> (1) is required to register under the Sex Offender Registration and Notification Act;
>
> (2)(A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or
>
> (B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and
>
> (3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;
>
> shall be fined under this title or imprisoned not more than 10 years, or both.

The federal offense specifies, with respect to an individual who is a "sex offender" because of a state court conviction, as defendant is alleged to be in this case, the federal government can prosecute the individual's failure to register only when interstate or foreign travel, or entrance into, egress from or residency in Indian country, is involved.

---

[3] See Adam Walsh Act, Pub. L. No. 109-248, 120 Stat. 587, 601-02 (2006).

1
   **B.  <u>Factual Background</u>**

2
       As the Government explains and defendant does not dispute, on

3
April 8, 1985, defendant was convicted of a felony under California

4
Penal Code Section 288(a) for lewd and lascivious acts with a child

5
under the age of 14.   Defendant received three years in state

6
custody.  A certified public record submitted by the Government and

7
entitled "Notice Of Registration Requirement" (Doc. 40, Ex. C at 1)

8
indicates   that   defendant   was   notified   of   his   "lifetime"

9
responsibility to register as a sex offender under California law

10
and to update his registration upon certain events such as a change

11
in residency.  Additional certified public records (Doc. 40, Ex. C

12
at   2-3)   indicate   that   defendant   periodically   updated   his

13
registration with the San Francisco Police Department until 2002.

14
At oral argument on the instant motion, defense counsel indicated

15
that   defendant   was   convicted   in   California   and   registered   in

16
California. (Doc. 33 at 34:17-18.)

17
       The Government represents that, subsequent to defendant's

18
conviction, defendant moved to Ohio where he was told to register

19
by Ohio authorities.   Allegedly defendant left Ohio and moved to

20
Delaware   and   also   to   New   York.    Defendant   traveled   back   to

21
California and allegedly has resided in Fresno since on or about

22
September 6, 2007, until his arrest on December 18, 2007.

23
       On December 20, 2007, a federal grand jury returned a single

24
count indictment charging defendant with a violation of 18 U.S.C.

25
§ 2250(a).   On March 27, 2008, a federal grand jury returned the

26
previously mentioned superceding indictment which differed from the

27
original   only   in   terms   of   the   alleged   dates   of   travel.     The

28
superceding indictment charges that defendant: (i) was required to

**6**

register under SORNA; (ii) traveled in interstate commerce, "beginning on or about September 6, 2007 and continuing to on or about December 17, 2007, in the County of Fresno, State and Eastern District of California, and elsewhere,"; and (iii) knowingly failed to update his registration as required by SORNA, all in violation of 18 U.S.C. § 2250(a).  Defendant filed a motion to dismiss the superceding indictment, which motion he amended, and the court heard oral argument on the amended motion on August 8, 2008, and September 15, 2008.

### III.  STANDARD OF DECISION

In a motion to dismiss an indictment, a defendant may present any defense to the indictment "that the court can determine without a trial of the general issue." Fed. R. Crim. P. 12(b)(2).  A motion to dismiss an indictment is a proper vehicle for raising legal defenses which the court can consider without making factual determinations that invade the province of the jury. *See United States v. Covington*, 395 U.S. 57, 60 (1969); *United States v. Nukida*, 8 F.3d 665, 669-70 (9th Cir. 1993).

In his amended motion, defendant has raised several constitutional challenges to the validity of SORNA.  There is a "time-honored presumption" that federal enactments are constitutional, *Reno v. Condon,* 528 U.S. 141, 148 (2000), and "[d]ue respect for the decisions of a coordinate branch of Government demands that [a court] invalidate a congressional enactment only upon a plain showing that Congress has exceeded its constitutional bounds," *United States v. Morrison*, 529 U.S. 598, 607 (2000).  The burden is on the party challenging the enactment to demonstrate its alleged unconstitutionality. *N.Y. State Club Ass'n, Inc. v. City of*

**7**

*New York*, 487 U.S. 1, 17 (1988).  In construing statutory language, "**where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress.**" *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988).

## IV. DISCUSSION

### A. SORNA's Applicability To Defendant

Defendant raises a threshold argument that SORNA does not apply to him and this precludes his indictment under 18 U.S.C. § 2250(a). The criminal enforcement provision makes it unlawful for a person who "is required to register under [SORNA]," § 2250(a)(1), to knowingly fail to register or update a registration "as required by [SORNA]," § 2250(a)(3).  Defendant argues that because SORNA does not create any federal registry in which he can register and California has not yet implemented SORNA and created a SORNA compliant registry, defendant cannot register as required by SORNA. Thus, according to defendant, he could not have committed the alleged crime, and prosecuting him for a crime he could not have committed violates due process and the *Ex Post Facto* Clause.

Defendant's line of reasoning has been advanced in other cases and universally rejected. *See Crum*, 2008 WL 4542408, at *2; *United States v. Hall*, ___ F. Supp. 2d ___,___, 2008 WL 4307196, at *3 (N.D.N.Y. Sept. 23, 2008); *United States v. Vasquez*,___, F. Supp. 2d ___, ___, 2008 WL 4276901, at *4 (N.D. Ill. Sept. 19, 2008); *Stevens,* 2008 WL 4335725*,* at *5-6*; United States v. Pietrantonio,* No. 08-170 (MJD/RLE), 2008 WL 4205546*,* at *7-8 (*D. Minn. Sept. 9, 2008); United*

**8**

*States v. Torres,* 573 F. Supp. 2d 925, 942–43 *(*W.D. Tex. 2008)*;* *United States v. Van Buren, Jr.,* No. 3:08-CR-198, 2008 WL 3414012, at *5-6 *(*N.D.N.Y. Aug. 8, 2008)*; Ditomasso*, 552 F. Supp. 2d at 238-40; *United States v. Utesch,* No. 2:07-CR-105, 2008 WL 656066, at *7-8 (E.D. Tenn. Mar. 6, 2008)*; United States v. Pitts*, No. 07-157-A, 2007 WL 3353423, at *7 (M.D. La. Nov. 7, 2007); *United States v. Gould*, 526 F. Supp. 2d 538, 542 (D. Md. 2007).  The court has not located any case which has agreed with defendant's position and for good reason – it lacks merit.

    SORNA's criminal enforcement provision applies to any person who "is required to register under [SORNA]." 18 U.S.C. § 2250(a)(1). This first element of the federal statutory offense "merely identifies to whom the statute applies" and does not act as a triggering event. *May*, 535 F.3d at 920.  The statute applies to a person who is a "sex offender" under SORNA. *Id*. Whether defendant meets SORNA's definition of a "sex offender" does not depend on whether California has implemented SORNA. *See Stevens*, 2008 WL 4335725, at *5.   Here defendant does not dispute that he was convicted under California law and that his conviction renders him a "sex offender" under SORNA's definition.

    As a "sex offender," SORNA commands that he "shall register, and keep the registration current, in each jurisdiction where [he] resides, where [he] is an employee, and where [he] is a student." 42 U.S.C. § 16913(a); *see also* § 16913(c).  This federal statutory command is directed at sex offenders not at states and, when coupled with SORNA's enforcement provision, 18 U.S.C. § 2250(a), it places a free-standing, federally enforceable duty on sex offenders to register in conformity therewith. *See Crum*, 2008 WL 4542408, at *2.

**9**

Therefore, "while [California] may choose never to implement the law, and thereby forego a portion of its federal funding, *see* 42 U.S.C. § 16925, an individual sex offender has no option to flout his federal obligation." *Id*. When, as alleged here, a sex offender travels in interstate commerce and disobeys the federal command to keep his registration current "as required by [SORNA]," 18 U.S.C. § 2250(a)(3), *May*, 535 F.3d at 921, the sex offender faces federal prosecution.

To buttress his argument that SORNA's command to register does not apply in pre-implementation jurisdictions, defendant disregards the statutory text and relies on language from the Attorney General's SORNA Guidelines, 73 Fed. Reg. 38,030, 38,063-64 (July 2, 2008). Defendant's reliance on the Attorney General's SORNA Guidelines is unpersuasive for at least two reasons.

First, "[t]he plain language of SORNA requires an offender to register, without regard to any construction of the statute by the Attorney General." *United States v. Hinen*, 487 F. Supp. 2d 747, 750 (W.D. Va. 2007). "Defendant's obligation to register was triggered by the enactment of the statute; it is not contingent upon a green light from the Attorney General." *Crum*, 2008 WL 4542408, at *2.

Second, even assuming a "green light" from the Attorney General was necessary, another passage from the Attorney General's SORNA Guidelines makes perfectly clear that "SORNA applies to all sex offenders, including those convicted of their registration offenses . . . *prior to particular jurisdictions' incorporation of the SORNA requirements into their programs*." 73 Fed. Reg. at 38063 (emphasis added).

Defendant's related argument that because California has not

implemented SORNA, it was impossible for him to supply the information that SORNA required and therefore comply with the law is equally unpersuasive, and also misleading.  Defendant has confused his current federal duty to register with a state's duty, should it decide to assume it, to create SORNA compliant registries.

"The fact that the states have not yet met their obligations under SORNA (they have at least until July 27, 2009, to do so) is of no consequence in determining whether it was possible for the Defendant to meet his own obligations under the Act." *United States v. Adkins*, No. 1:07-CR-59, 2007 WL 4335457, at *6 (N.D. Ind. Dec. 7, 2007).  "Every district court to confront the issue has held that a defendant could comply with SORNA even when the state in which the defendant was required to register had not yet implemented the federal law." *United States v. Shenandoah*, 572 F. Supp. 2d 566, 579 (M.D. Pa. 2008).

As mentioned, SORNA requires a sex offender to "register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." 42 U.S.C. § 16913(a).  In order to keep his registration current, a sex offender must appear in a relevant jurisdiction and "inform that jurisdiction of all changes in the information required for that offender in the sex offender registry." *Id.* § 16913(c).  A "sex offender registry" is defined in SORNA as "a registry of sex offenders, and a notification program, maintained by a jurisdiction." *Id.* § 16911(9).  "A state created registry which is maintained after the effective date of SORNA satisfies the statutory definition of a sex offender registry." *United States v. Elmer*, No. 08-20033-01-KHV, 2008 WL 4369310, at *9

(D. Kan. Sept. 23, 2008) (collecting cases).  Because California had a "sex offender registry" after SORNA's enactment, to update his registration, SORNA demanded that defendant inform California of the changes in the information required for him in its registry. *Id; Crum,* 2008 WL 4542408, at *3*; Shenandoah,* 572 F. Supp. 2d at 579. Defendant has not shown that it was impossible for him to do so.

Defendant's comparison between California's informational requirements and the enhanced informational requirements set forth in § 16914(b) of SORNA is unavailing.  Section 16914(b) requires each *jurisdiction* to ensure that certain information is included in their registries *if* they decide to implement SORNA.  Moreover, defendant is not being prosecuted for providing less information than required by SORNA.  Defendant is being charged with the outright failure to update his registration in any way. *See Shenandoah*, 572 F. Supp. 2d at 579.

Defendant's argument that because California has not implemented SORNA, he could not register under SORNA or provide what SORNA requires, lacks merit.  His federal duty to update his registration existed independent of California's implementation of SORNA and he has not demonstrated that he was prevented from utilizing California's existing mechanism to update his registration in accordance with SORNA's mandate.

**B. Notice**

Defendant argues that notice of his SORNA registration requirements, as contemplated by 42 U.S.C. § 16917, which he allegedly did not receive, is required before he can prosecuted for failing to comply with SORNA.  According to defendant, his duty to register under SORNA arises only after such notice is given.

**12**

Defendant further argues that absent specific notice of SORNA's registration requirements, he could not have "knowingly" failed to register as required by SORNA.  Lastly, defendant contends that, in the absence of specific notice of SORNA's registration requirements, prosecuting him for failing to register under SORNA violates due process.  The court is not persuaded.

### 1. Notice And The Statutory Offense

#### a. Notification from an appropriate official

It is true that § 16917 of SORNA requires "appropriate official[s]" to notify sex offenders of the Act's registration requirements and to ensure that sex offenders are registered.  A defendant's receipt of notice under § 16917, however, is not an element of the federal offense at issue. *See United States v. Zuniga*, No. 4:07CR3156, 2008 WL 2184118, at *15 (D. Neb. May 23, 2008)("[R]eceipt of notice as required under § 16917(a) is not an element of a 18 U.S.C. § 2250 offense*."); see also Elmer*, 2008 WL 4369310, at *10 ("Notice of the particular statute is not an element of a criminal violation of Section 2250."); *United States v. Brown*, No. 08-0224-WS, 2008 WL 4079306, at *7 (S.D. Ala. Aug. 28, 2008)("The courts that have addressed the issue . . . have rejected the notion that SORNA makes notice under Section 16917 a necessary predicate to prosecution."); *Shenandoah*, 572 F. Supp. 2d at 582 (concluding that "nothing in the plain language of SORNA indicates that Congress intended a state's compliance with § 16917 to be a precondition to prosecution for failing to comply with SORNA"); *United States v. Dixon*, No. 3:07-CR-72(01) RM, 2007 WL 4553720, at *4 (N.D. Ind. Dec. 18, 2007) ("Mr. Dixon need not, to have committed the federal crime, have been told by some official that he had to

13

register pursuant to SORNA.").   The federal offense punishes those who fail to register or update  "as required by [SORNA]", 18 U.S.C. § 2250(a)(3), not those who fail to register or update as notified. Defendant's federal duty to register and keep his registration current is "stated in the plain language of 42 U.S.C. § 16913 and is not contingent upon . . . any other actor . . . governed" by SORNA. *Crum*, 2008 WL 4542408, at *3.  Although a state's failure to comply with SORNA certainly may impact its federal funding, it does not vitiate the requirements imposed on sex offenders. *Id.*

### b. Notice and the "knowingly" element

Defendant also argues that he could not have "knowingly" failed to update his registration as required by SORNA, 18 U.S.C. § 2250(a)(3), absent specific notice of his registration duties under SORNA.  This argument is nothing more than a claim than defendant lacked the requisite mental state.  Defendant's motion to dismiss the indictment is not the appropriate vehicle for raising this factual issue. *See Elmer*, 2008 WL 4369310, at *10. For present purposes, it is enough to say that the superceding indictment properly alleges the *mens rea* requirement by asserting that defendant "did knowingly fail to update his registration as required by [SORNA]" (Doc. 17). *Id.*  If defendant wants to argue that, on the facts of this case, he did not knowingly fail to supply the information that SORNA required, he will have occasion to do so at trial.

Defendant's reliance on *United States v. Smith*, 528 F. Supp. 2d 615 (S.D. W. Va. 2008), is unpersuasive.  There, the defendant was convicted of a sex offense prior to SORNA's enactment and allegedly violated SORNA before the date of the Attorney General's interim

**14**

rule, 28 C.F.R. § 72.3. *Id.* at 618.  The interim rule states that SORNA applies to individuals who were convicted of sex offenses prior to SORNA's enactment. *Id.* at 617-18.  The court determined that the date of the Attorney General's interim rule, February 28, 2007, not the earlier date of SORNA's enactment, July 27, 2006, marked the commencement of defendant's duties under SORNA. *Id.* Because defendant's alleged registration failure occurred before the interim rule, the court concluded that defendant "could not have knowingly violated SORNA, as SORNA did not apply to him [yet]." *Id.* at 620.

The underlying premise in *Smith*, that the date of the Attorney General's interim rule, not the date of SORNA's enactment, is the operative date here, is not well reasoned. *See Crum*, 2008 WL 4542408, at *4 (collecting authorities contrary to *Smith* on this issue).  Even under a *Smith* regime, defendant's argument would fail. Defendant's alleged violation took place at least six months *after* the Attorney General's interim rule.  There is no room to argue here that defendant could not have known, in advance, whether SORNA applied to him.

Defendant also points to text from the SMART[4] Guidelines – 73 Fed. Reg. at 38063 – to support his argument that the absence of specific notification bars his prosecution.  Whatever their import, the SMART Guidelines cited by defendant discuss the protocol for

_____

[4]"SMART" stands for the Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering and Tracking. The Attorney General's SORNA Guidelines provide that the SMART Office is charged with supervising the implementation of SORNA in the various jurisdictions*. See United States v. David*, No. 1:08cr11, 2008 WL 2045827, at *3 (W.D.N.C. Apr. 18, 2008).

**15**

states to follow if they decide to implement SORNA, which implementation will entail the adoption of enhanced registry requirements. *See United States v. David*, No. 1:08cr11, 2008 WL 2045827, at *5 (W.D.N.C. Apr. 18, 2008) (addressing a similar argument). Here, however, defendant is not being charged with the failure to provide some new, SORNA-specific information which states will collect if they decide to implement SORNA or the failure to satisfy some new, post-implementation obligation. In those types of cases, there may be practical difficulties in proving a knowing failure absent evidence of specific notice, but no such case is before the court.

### 2. <u>Notice and Due Process</u>

Defendant argues that absent specific notice of his SORNA registration duties, prosecuting him for failing to register under SORNA violates due process. Defendant's argument and his reliance on *Lambert v. California*, 355 U.S. 225 (1958) for the proposition that notice is essential with respect to "wholly passive" conduct like failing to register, are misguided. The court in *Crum* faced and persuasively rejected an identical argument:

> Defendant cites *Lambert v. California* . . . in contending that failure to register is 'wholly passive' conduct for which specific notice of the law is essential, *id.* at 228. However, defendant overstates *Lambert's* reach. *Lambert* does not suggest that due process requires all defendants accused of failing to act in accordance with the law be specifically notified by law enforcement officials of their legal duties. 'Few offenders have ever had relevant sections of the U.S. Code read to them before committing their crimes, yet they are expected to comply with it even so.' *United States v. Roberts*, No. 6:07-CR-70031, 2007 WL 2155750, at *2 (W.D. Va. July 27, 2007). Instead, *Lambert* is a 'very limited exception to the general principle that ignorance of the law is not an excuse.' *Ditomasso*, 552 F. Supp. 2d at 244. In *Lambert*, not only did the defendant have no actual knowledge of her duty to register, but also lacking were any 'circumstances which might move one to

16

1
2
3
4
5
6
7
8

> inquire as to the necessity of registration,' *Lambert*, 355 U.S. at 229. That is not the case here. Following his conviction, defendant was required to register in the state of Missouri, which the government alleges he did until March 27, 2007. Dkt. # 23 at 5. Washington state law also required him to register when he moved into the state. Revised Code of Washington 9A.44.130. Therefore, defendant 'had sufficient notice that failure to register and update registration was illegal,' *Pitts*, 2007 WL 3353423, at *7; *see also Gould*, 526 F. Supp. 2d at 545[5]; *Hinen*, 487 F. Supp. 2d at 754. Defendant's knowledge of state law registration requirements was enough to put him on inquiry notice of the corresponding federal law. Due process requires no more.

9   2008 WL 4542408, at *4. The same reasoning applies here. After his
10  conviction, defendant was required to register and update his
11  registration in California, which the Government contends, with
12  supporting documentation, that he did until 2002. Documentation
13  submitted by the Government purports to show that, on multiple
14  occasions from 1999 to 2002, defendant updated his residency
15  information in California's registry (Doc. 40, Ex. C at 1-3), and
16  that defendant specifically acknowledged his "lifetime" duty to
17  register pursuant to California law (Doc. 40, Ex. C at 1). Under
18  California law, defendant was required to register when he moved
19  back into California. *See* Cal. Penal Code § 290(b). Just as in
20  *Crum*, defendant "had sufficient notice that failure to register and
21  update registration was illegal." 2008 WL 4542408, at *4 (quotation
22  marks omitted). Defendant's knowledge of California registration
23  requirements was enough to put him on inquiry notice of the
24  corresponding federal law. *Id.* Defendant's due process argument
25  fails.

26

---

27      [5] *Gould* collected over a dozen cases which rejected the due
28  process argument that defendant raises here. 526 F. Supp. 2d at 545 n.8.

Defendant relies on *United States v. Barnes*, No. 07 Cr. 187, 2007 WL 2119895 (S.D.N.Y. July 23, 2007), in support of his due process argument.   There, the defendant was convicted of a sex offense prior to SORNA's enactment and arrested for allegedly violating SORNA on the same day the Attorney General issued the interim rule (February 28, 2007). *Id.* *1-2.   The court determined that defendant's registration duties under SORNA were triggered as of the date of the interim rule, not the earlier date of SORNA's enactment, and narrowly held that defendant's "arrest on the same day as the promulgation of [the] interim rule making SORNA retroactively applicable [to him] is a due process violation." *Id.* at *3.

The underlying premise in *Barnes*, that the date of the Attorney General's interim rule, not the date of SORNA's enactment, is controlling here, is unpersuasive.   Even if *Barnes* applies, defendant's case is distinguishable.   Defendant's alleged violation took place at least six months *after* the Attorney General's interim rule.   *Barnes* explicitly confined its holding to the unique "limited circumstances" of the case where defendant was arrested on the same day the interim rule issued. *Id.* at *6.   No such "limited circumstances" exist here.

### C.   Due Process – Sex Offender Status and Publication

Defendant argues that SORNA contravenes his procedural and substantive due process rights under the Fifth Amendment because SORNA does not provide a hearing or petition process before he is compelled to comply with SORNA's registration requirements or before his name is published over the Internet in a sex offender registry. This argument has been rejected by several courts. *See, e.g.*, *United*

18

1  *States v. Robinson*, No. CR 108-021, 2008 WL 4086474, at *7-8 (S.D.

2  Ga. Sept. 2, 2008); *Torres*, 573 F. Supp. 2d at 941-42.

3  In *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1

4  (2003), the Supreme Court rejected a claim that Connecticut's

5  Megan's Law violated the procedural due process component of the

6  Fourteenth Amendment because the law did not provide registrants

7  with a hearing to determine whether they were likely to be currently

8  dangerous before being included Connecticut's publically

9  disseminated sex offender registry. *Id.* at 4, 6.   The Court

10 concluded that "due process does not require the opportunity to

11 prove a fact that is not material to the State's statutory scheme,"

12 *id.* at 4, and there, the sex offender's current dangerousness was

13 not material.  Because Connecticut's registry requirements, and the

14 associated public disclosure of a registrant's information, hinged

15 on "an offender's conviction alone," due process did not require

16 that the offender be afforded an opportunity to prove something that

17 was of no consequence to Connecticut's Megan's Law, i.e., his

18 current dangerousness or lack thereof. *Id.* at 7.

19 Similarly here, SORNA's registration requirements, and a

20 registrant's inclusion in a publically disseminated sex offender

21 registry, hinge solely on an offender's past conviction for a

22 qualifying "sex offense," not whether he is currently dangerous or

23 likely to recidivate. *See* 42 U.S.C. §§ 16911, 16913, 16918.

24 Procedural due process does not require that defendant be given an

25 opportunity to prove he is not currently dangerous or likely to

26 recidivate, something which is of no consequence to SORNA.   As

27 explained in *United States v. Mason*, 510 F. Supp. 2d 923, 930-31,

28 (M.D. Fla. 2007):

SORNA defines a 'sex offender' as 'an individual who was convicted of a sex offense.' 42 U.S.C. § 16911(1). Although sex offenders are classified into one of three tiers depending on the severity of the offense and their classification subjects them to slightly different registration requirements, a[n] offender's tier is determined by the nature of his past conduct, not his risk of recidivism or current level of dangerousness. *See* 42 U.S.C. § 16911(2)-(4). Additionally, the lowest classification is a 'catch all' for all sex offenders who fall within the general definition of sex offender but outside the specific requirements of the higher tiers. *See* 42 U.S.C. § 16911(1), (2). Therefore, the Court finds that the Defendant's potential for recidivism or current dangerousness are not material to SORNA. Thus, principles of procedural due process do not require a hearing for Defendant to argue these issues.

Defendant also argues that SORNA violates his procedural due process rights because it does not provide a mechanism to challenge the validity of his prior sex offense conviction. SORNA in no way precludes a defendant from presenting a defense at the prior proceeding leading to his conviction or appealing that conviction if he believes it erroneous. SORNA does not infringe upon any procedural due process rights by not providing some sort of extra post-conviction hearing to address the validity of the conviction. *See United States v. Gonzales*, No. 5:07cr27-RS, 2007 WL 2298004, at *11 (N.D. Fla. Aug. 9, 2007) (rejecting the same argument).

Defendant argues that SORNA violates his substantive due process rights because he "may be deprived of liberty when his name is listed on the state and federal registries and he is compelled to comply with the other reporting/registration portions of the ACT" *if* his sex offense "conviction is [later] overturned or expunged, or [he] is [later] pardoned." (Doc. 28-2 at 27 & n.18.) Defendant lacks standing to challenge SORNA with these hypothetical situations. Defendant does not dispute that he has was convicted of a qualifying sex offense and he has not demonstrated that his

conviction is likely to be overturned or expunged or that he is likely to be pardoned.  Because defendant cannot identify any injury or threat of injury tied to the infirmity he perceives in SORNA, he lacks standing to raise his substantive due process argument. *See Robinson*, 2008 WL 4086474, at *8 n.4 (rejecting the same argument on standing grounds); *see also Torres*, 573 F. Supp. 2d at 941.[6]  To the extent defendant also claims that he should have a procedural due process right to a hearing or petition process through which he can demand that his information is removed from a registry when his sex offense conviction is overturned or expunged or when defendant is pardoned, defendant can raise this argument if and when he ever has standing to do so, which, here, he does not have.

      **D.**   <u>**Tenth Amendment**</u>

     The Tenth Amendment provides that the "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. CONST. amend. X.  Defendant concedes that Congress can condition the receipt of federal funds on California's implementation of SORNA as a valid exercise of Congress's spending power.  Defendant argues, however, that to the extent SORNA currently forces a state official to accept registration information from a sex offender before the state elects to implement SORNA, the

---

    [6] Even assuming defendant had standing to raise this substantive due process argument, and further assuming that a protectible liberty interest is at stake, the statute would be subject to the exceedingly deferential rational basis review. *See Doe v. Tandeske*, 361 F.3d 594, 597 (9th Cir. 2004); *see also Mason*, 510 F. Supp. 2d at 931 (declining to find SORNA not rationally related to a legitimate government interest when faced with the same argument that defendant raises here).

Tenth Amendment is contravened.  Defendant cites *Printz v. United States*, 521 U.S. 898, 935 (1997), in which the Supreme Court concluded that the Tenth Amendment, and the constitutional system of dual sovereignty which it embraces, prohibits the federal government from commandeering state and local officers into administering or enforcing a federal regulatory program.  Prior to *Printz*, in *New York v. United States*, 505 U.S. 144 (1992), the Supreme Court held that the federal government could not "compel the States to enact or enforce a federal regulatory program." *Printz*, 521 U.S. at 935.

        The defendant here, a private party who is not acting in any official capacity or otherwise on behalf of or in conjunction with California, lacks standing to bring a Tenth Amendment challenge to SORNA. *See Tenn. Elec. Power Co. v. Tenn. Valley Auth.*, 306 U.S. 118, 144 (1939) (concluding that private parties not acting in any official capacity or in conjunction with a state would not have standing to assert a Tenth Amendment claim); *Nance v. EPA*, 645 F.2d 701, 716 (9th Cir. 1981) (noting that "insofar as the [T]enth [A]mendment is designed to protect the interest of the states qua states," the "standing of [private parties] to assert" a Tenth Amendment claim "may be seriously questioned"); *see also Elmer*, 2008 WL 4369310, at *10 (noting that the defendant as a private citizen lacked standing to bring a Tenth Amendment challenge to SORNA but analyzing the merits of the challenge notwithstanding and rejecting it); *Robinson*, 2008 WL 4086474, at *10 (concluding that the defendant as a private citizen lacked standing to raise a Tenth Amendment challenge to SORNA); *Shenandoah*, 572 F. Supp. 2d at 584 (same); *United States v. Abregana*, 574 F. Supp. 2d 1123, 1128 n.3 (D. Haw. 2008) (concluding, in another context, that "[a]s a private

1  party . . . Respondent lacks standing to assert an independent
2  constitutional claim alleging that the Act violates the Tenth
3  Amendment").

4      Assuming, *arguendo*, that defendant has standing, his Tenth
5  Amendment argument lacks merit in any event.  It appears that every
6  court which has considered a Tenth Amendment challenge to SORNA has
7  rejected it. *See Hall*, 2008 WL 4307196, at *5 (collecting cases).
8  Particularly damaging to defendant's argument is that he cannot
9  demonstrate that, in response to SORNA, California has made any
10 changes to its sex offender registry in this pre-implementation
11 period. *See id.*

12     In *Printz*, the Court held that the interim provisions of the
13 Brady Handgun Violence Prevention Act that directly forced state and
14 local officers to conduct background checks on prospective handgun
15 purchasers and to accept certain forms from firearms dealers as a
16 necessary prelude to conducting those background checks, violated
17 the Tenth Amendment. 521 U.S. at 902, 904, 933-35.  In this case,
18 there is no such direct compulsion or affirmative duty imposed upon
19 state or local officers.  Although, in this pre-implementation
20 period, SORNA directly imposes a duty on *sex offenders* to take
21 affirmative steps, "[i]t remains the prerogative of the States to
22 implement SORNA," *United States v. Cardenas*, No. 07-80108-CR, 2007
23 WL 425913, at *14 (S.D. Fla. Nov. 29, 2007), and adopt SORNA
24 compliant registries.  Unlike the state officers in *Printz*,
25 moreover, SORNA "does not require states, or their state officials,
26 to do anything they do not already do under their own laws." *Pitts*,
27 2007 WL 3353423, at *9.  As discussed above, defendant could have

28

updated his registration under SORNA by providing the information required for him in California's existing registry.  Had he done so, California officials would have done that which California law already required and no appreciable commandeering would have occurred. *See Shenandoah*, 572 F. Supp. 2d at 585 n.9 (rejecting a SORNA commandeering argument, concluding that the argument is premised on the "fallacy" that SORNA currently forces "state officials to take additional steps to register sex offenders beyond those already required by the individual state systems"); *United States v. Gagnon*, 574 F. Supp. 2d 172, 179 (D. Me. 2008) (rejecting a SORNA commandeering argument, concluding that "regardless of whether Maine chooses to accept the financial incentives, the Federal Government commits no violation of the Tenth Amendment in the context of this case by enforcing Gagnon's failure to comply with sex offender registration requirements that were simultaneously mandated by SORNA and existing Maine statutes").

Defendant has not demonstrated how Congress has commandeered any California officer and his Tenth Amendment challenge fails.

### E.   Non-Delegation Doctrine

Defendant argues that Congress's delegation of authority to the Attorney General under 42 U.S.C. § 16913(d) violates the nondelegation doctrine because it grants the Attorney General the discretion to retroactively apply SORNA to individuals convicted of qualifying sex offenses before SORNA's enactment.

"The nondelegation doctrine is rooted in the principle of separation of powers that underlines our tripartite system of Government," *Mistretta v. United States*, 488 U.S. 361, 371 (1989),

**24**

and provides, in general, that Congress is "not permitted to abdicate or to transfer to others the essential legislative functions with which it is [constitutionally] vested," *Panama Refining Co. v. Ryan*, 293 U.S. 388, 421 (1935).  The delegation at issue here, 42 U.S.C. § 16913(d), reads:

> **(d) Initial registration of sex offenders unable to comply with subsection (b) of this section**
>
> **The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.**

At present, there are at least two competing views and a split among the Circuits – between the 11th and the 8th –  as to what, in this section, Congress has authorized the Attorney General to do.

One view is that the first portion of this delegation (ending at "particular jurisdiction,") gives the Attorney General broad authority to determine whether SORNA applies to individuals who were convicted of qualifying sex offenses prior to SORNA's enactment. *See, e.g., United States v. Madera*, 528 F.3d. 853, 858 (11th Cir. 2008); *see also Smith*, 528 F. Supp. 2d at 617-18.  If this reasoning is accepted, the delegation of authority gives the Attorney General an expansive legislative function. *Crum*, 2008 WL 4542408, at *6; *United States v. Cardenas*, No. 07-80108-CR, 2008 WL 896206, at *2 (S.D. Fla. Mar. 31, 2008); *Hinen*, 487 F. Supp. 2d at 753.  For proponents of this view, the Attorney General's interim rule issued on February 28, 2007, which constitutes an exercise of the delegation, marks the commencement of SORNA's applicability to

individuals convicted of qualifying sex offenses prior to SORNA's enactment. *See Madera*, 528 F.3d at 858-59; *Smith*, 528 F. Supp. 2d at 617-18.

The second view takes a more holistic approach to the delegation and concludes that it does not permit the Attorney General to determine whether SORNA applies to all individuals convicted of qualifying sex offenses prior to SORNA's enactment; rather it permits the Attorney General to create rules to deal with those particular individuals convicted of qualifying sex offenses prior to SORNA's enactment (or prior to implementation) who are unable to comply with SORNA's initial registration requirements. *See May*, 535 F.3d at 918-19; *see also Crum*, 2008 WL 4542408, at *4 (collecting cases); *United States v. Beasley*, No. 1:07-CR-115-TCB, 2007 WL 3489999, at *5 (N.D. Ga. Oct. 10, 2007) (collecting others). Under this view, the moment SORNA was enacted, it applied to all individuals who were convicted of qualifying sex offenses prior to SORNA's enactment except to the extent its strictures could be further refined by the Attorney General for initial registrants unable to comply within the statutory timetables set forth in § 16913(b). *See May*, 535 F.3d at 918-19; *Crum*, 2008 WL 4542408, at *4-5; *Beasley*, 2007 WL 3489999, at *5.  If this reasoning is accepted, the delegation of authority takes on a very limited scope and constitutional concerns raised by the delegation subside. *Cardenas*, 2008 WL 896206, at *2; *Hinen*, 487 F. Supp. 2d at 752-53.

In light of SORNA's text, structure, applicable rules of construction and pertinent authorities, the second interpretation is more reasonable.

1    The text of 42 U.S.C. § 16913(d), without considering the

2 heading of that section, does create an ambiguity with regard to the

3 scope of the Attorney General's authority. *May*, 535 F.3d at 918;

4 *Crum*, 2008 WL 4542408, at *5. Although upon initial consideration,

5 the introductory portion of the section appears to give the Attorney

6 General broad authority to "specify the applicability" of SORNA to

7 all sex offenders convicted before SORNA's enactment, the second

8 portion vests the Attorney General with the authority to deal with

9 "*other* categories of sex offenders who are unable to comply with

10 subsection (b) of this section." 42 U.S.C. § 16913(d)(emphasis

11 added). When reading the section holistically, one

12        possible meaning of subsection (d) is that past offenders
13        ('offenders convicted before the enactment of this Act')
          are included within (and not a separate group from) the
14        broader category of 'sex offenders who are unable to
          comply with subsection (b),' and it is only as to those
15        'sex offenders who are unable to comply with subsection
          (b)' that the Attorney General was given authority under
16        subsection (d) to issue clarifying regulations. In light
          of this ambiguity, the title of subsection (d) should be
17        considered. *See I.N.S. v. Nat'l Ctr. for Immigrants'
          Rights, Inc*. 502 U.S. 183, 189 (1991) (noting that 'the
18        title of a statute or section can aid in resolving an
          ambiguity in the legislation's text'). Once the title is
19        considered, the ambiguity in the one sentence text that
          follows the descriptive title is resolved, and it becomes
20        clear that subsection (d) only applies to initial
          registration.

21 *Beasley*, 2007 WL 3489999, at *6; *accord May*, 535 F.3d at 918-19;

22 *Crum*, 2008 WL 4542408, at *5. Interpreting § 16913(d) in this

23 manner also is consistent with other statutory text and the express

24 purpose of SORNA.

25    In the text of SORNA's registration requirements, Congress

26 expressed its intent to make SORNA applicable to individuals

27 convicted of sex offenses prior to SORNA's enactment. The

28
                                    27

registration requirements demand that a "sex offender shall register," 42 U.S.C. § 16913(a), and a "sex offender" is an individual who "*was* convicted of a sex offense," § 16911(1)(emphasis added). *See United States v. Waybright*, 561 F. Supp. 2d 1154, 1171 (D. Mont. 2008).  Even the Attorney General recognized that, on their face, SORNA's registration requirements provide no "exception for sex offenders whose convictions predate the enactment of SORNA." 72 Fed. Reg. 8894-01, 8896 (Feb. 28, 2007); *see also May*, 535 F.3d at 919 (concluding that the "Attorney General did not believe a rule was even needed to confirm SORNA's applicability to" defendants whose predicate offenses predated SORNA's enactment, but he issued the rule interim anyway to make it "'indisputably clear'" and foreclose contrary arguments) (*citing* 72 Fed. Reg. at 8896).  The *May* approach better reflects Congress's objective intent, as gleaned from the statutory text, to make SORNA applicable to past offenders.

The express purpose of SORNA is to "protect the public from sex offenders and offenders against children." 42 U.S.C. § 16901.  It would be incongruous for Congress to, on the one hand, express grave concern for the risk sex offenders pose to the public and yet, on the other hand, create a statute that has no application to a vast array of sex offenders (those convicted of sex offenses prior to SORNA's enactment) and that does nothing to protect the public from these sex offenders unless and until the Attorney General decides to act, all the while these same sex offenders may be traveling in interstate commerce, failing to register in offender registries and thereby dropping off the radar screen, which appears to be precisely what Congress was trying to thwart. *See Cardenas*, 2008 WL 896206, at

28

*2 (noting it would have been "counterproductive" for Congress not to make SORNA applicable to past offenders).   Interpreting § 16913(d) in such a manner as to give the Attorney General the authority to determine the applicability of SORNA to all individuals convicted of sex offenses prior to SORNA's enactment, which authority would include the power to affirmatively exempt past offenders, would be inconsistent with Congress's express intent to create a "comprehensive" national registration system, § 16901.

      Interpreting the Attorney General's authority as *May* did also is consistent with the principle that, in construing statutory language, "where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." *DeBartolo*, 485 U.S. at 575.   Interpreting § 16913(d) as granting the Attorney General broad authority to determine whether SORNA applies to individuals convicted of sex offenses before SORNA's enactment would give the Attorney General a significant legislative function and raise serious constitutional concerns. *See Crum*, 2008 WL 4542408, at *6; *Cardenas*, 2008 WL 896206, at *2; *Hinen*, 487 F. Supp. 2d at 753. Interpreting § 16913(d) in a limiting manner that avoids such concerns is not plainly contrary to Congress's intent; in fact, for the reasons discussed above, it is consistent with it.

      Under the *May* approach, the limited delegation, which grants the Attorney General the authority to create rules to deal with initial registrants who are unable to comply with the initial registration requirements, does not violate the nondelegation

1  doctrine. *See Hinen*, 487 F. Supp. 2d at 752 (concluding that "[t]he
2  Attorney General has only been given the power to promulgate
3  regulations under the most limited of circumstances. The delegation
4  of such authority is not so broad as to be violative of the
5  non-delegation doctrine").   Based on this interpretation of §
6  16913(d), for the reasons stated below, the delegation and the
7  interim rule have no bearing on this case.

8          **F. The Administrative Procedures Act**

9          Defendant argues that the Attorney General's interim rule
10  violated the Administrative Procedures Act, 5 U.S.C. § 553, by
11  failing to provide a public notice and comment period.  As defendant
12  notes, the APA generally requires agencies to publish a public
13  notice regarding a proposed rule in the Federal Register at least 30
14  days before its effective date and provide an opportunity for
15  interested parties to submit comments and other relevant material
16  before the rule becomes effective. *See* 5 U.S.C. § 553(b)-(d).  The
17  provision of notice and comment is not required when "the agency for
18  good cause finds . . . that notice and public procedure thereon are
19  impracticable, unnecessary, or contrary to the public interest." §
20  553(b)(B).  The Attorney General made such a finding, 72 Fed. Reg.
21  at 8896-97, which defendant challenges.  Courts which have reached
22  the merits of this argument have concluded uniformly that the
23  Attorney General possessed the requisite "good cause" to forgo the
24  notice and comment requirements. *See, e.g.*, *Vasquez*, 2008 WL
25  4276901, at *9; *Torres*, 573 F. Supp. 2d at 950 (collecting cases);
26  *Shenandoah*, 572 F. Supp. 2d at 590.

27          Defendant's main argument is that because California and other
28
                                    **30**

states have not yet implemented SORNA and they have until July 27, 2009, to do so, the Attorney General faced no immediate rush to make SORNA applicable to individuals, like defendant, whose predicate convictions predate SORNA's enactment.   Defendant's argument rests on two flawed premises: (1) that the interim rule made SORNA applicable to him; and (2) that there is no way to register sex offenders, like him, in a manner compliant with SORNA prior to a state's implementation of SORNA.   The second premise has already been rejected.   The first premise, touched upon above, is discussed and rejected below.

    The indictment charges defendant with failing to "update" his registration, not failing to initially register.   The obligation to update — or keep the registration current — is contained in § 16913(a) and § 16913(c).   Because defendant already was registered in an existing sex offender registry, § 16913(b) governing initial registration and the Attorney General's associated authority under § 16913(d) to deal with initial registration issues, do not pertain to him:

> Defendant, a sex offender who was registered prior to the enactment of SORNA, was required to keep his registration current in accordance with its terms. Because he had first registered years before SORNA, subsections (b) and (d), concerned exclusively with *initial* registration, do not apply to him. Thus he is a person 'required to register under [SORNA]' and subject to the penalties imposed by 18 U.S.C. § 2250(a).

*Roberts*, 2007 WL 2155750, at *2 (emphasis and alteration in original); *accord May,* 535 F.3d at 919; *Elmer*, 2008 WL 4369310, at *6 ("Defendant is charged under the congressionally-defined crime in Section 2250 and in particular for failing to update his

1  registration. The Attorney General's interim rule as to initial

2  registrations simply does not apply to defendant"); *Beasley*, 2007 WL

3  3489999, at *5 & n.5.

4       Because defendant was not an initial registrant unable to

5  register before SORNA's enactment, defendant's "obligation to

6  register [or update] under SORNA was neither created nor altered by

7  the interim rule adopted by the Attorney General." *Zuniga*, 2008 WL

8  2184118, at *12; *see also May*, 535 F.3d at 921. Defendant lacks

9  standing to challenge the interim rule which did not impact his

10 duty, as a previously registered sex offender, to maintain his

11 registration in conformity with SORNA's mandate. *Elmer*, 2008 WL

12 4369310, at *6; *Waybright*, 561 F. Supp. 2d at 1172.

13       G.   <u>Commerce Clause</u>

14       Defendant argues that SORNA's enforcement provision, 18 U.S.C.

15 § 2250(a), and SORNA's registration requirements, 42 U.S.C. § 16913,

16 are unconstitutional because they exceed Congress's power under the

17 Commerce Clause. Defendant points out that he was convicted of a

18 "purely state-law sex offense." Defendant argues that Congress

19 cannot, under its commerce power, punish any individual, like him,

20 for failing to register as required by SORNA when the predicate

21 offense that qualified the individual as a "sex offender" was a

22 state-law conviction, i.e., a purely local offense. Defendant also

23 argues that Congress cannot, under its commerce power, require any

24 individual, like him, to register when the predicate offense that

25 qualified the individual as a "sex offender" was a state-law

26 conviction. Because the federal enforcement provision and the

27 associated registration requirements are "interrelated parts of a

28

single statutory scheme with a distinctly national focus," *Crum*, 2008 WL 4542408, at *8, defendant's constitutional attack is unconvincing.

The Supreme Court has articulated "three broad categories of activity" that Congress can regulate under its commerce power: (1) "the use of the channels of interstate commerce"; (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities;" and (3) "those activities having a substantial relation to interstate commerce." *United States v. Lopez*, 514 U.S. 549, 558-59 (1995); *see also Morrison*, 529 U.S. at 608-09.

The overwhelming majority of courts that have addressed the issue, including the 8th Circuit, have found that the enactment of 18 U.S.C. § 2250(a) was a valid exercise of Congress's commerce power under the second prong of *Lopez*. *See May*, 535 F.3d at 921; *Crum*, 2008 WL 4542408, at *8; *Vardaro*, 575 F. Supp. 2d at 1185-86 (collecting a non-exhaustive list of nineteen cases). The criminal enforcement provision expressly limits SORNA prosecutions to those individuals who traveled in interstate commerce and knowingly failed to register as required by SORNA. Section 2250(a) falls squarely within the second prong of *Lopez* because it regulates "persons . . . in interstate commerce," *Lopez* 514 U.S. at 558. *See May*, 535 F.3d at 921; *Crum*, 2008 WL 4542408, at *8; *Vardaro*, 575 F. Supp. 2d at 1185. Under the second prong of *Lopez*, Congress can validly "regulate[] sex offenders who travel in interstate commerce even though the threat Congress [is] attempting to address — failure to

**33**

register as a sex offender – is an intrastate activity." *Waybright*, 561 F. Supp. 2d at 1161; *see also Ditomasso*, 552 F. Supp. 2d at 246 (rejecting the claim that "protecting the public from sex offenders is purely an intrastate police power" as "beside the point" considering that Congress may regulate persons in interstate commerce "even though the threat may come only from intrastate activities") (quotation marks omitted).

Defendant argues that because it need not be shown that he traveled in interstate commerce to purposely evade registration requirements, 18 U.S.C. § 2250 lacks a sufficient nexus to interstate commerce. However, there "is no constitutional requirement under the second prong that the 'person[ ] or thing [ ] in interstate commerce' travels with intent or is moved with intent to commit a crime." *Ditomasso*, 552 F. Supp. 2d at 247 (alterations in original); *see also Crum*, 2008 WL 4542408, at *8 ("[C]riminal intent need not accompany the move across state lines."). Indeed, it need not be shown that a gun, which at some point traveled in interstate commerce, was shipped across states lines for purposes of facilitating a crime in order for local possession of that gun to be federally punishable. *See, e.g., United States v. Hanna*, 55 F.3d 1456, 1462 & n.2 (9th Cir. 1995); *see also Waybright*, 561 F. Supp. 2d at 1161 (collecting cases "upholding other federal statutes that criminalize conduct with respect to things or persons that have traveled in interstate commerce regardless of whether the conduct criminalized is related to the prior interstate travel"). Moreover, interstate travel coupled with the *knowing* failure to register can create a concealed threat to the public regardless of whether the

**34**

travel itself was intentionally designed to evade registration requirements.[7]

Although he has not been charged with and faces no federal punishment for violating SORNA's registration provision, 42 U.S.C. § 16913, standing alone, defendant launches a separate and independent challenge to its constitutionality under the Commerce Clause. Although the majority of courts have upheld the validity of § 16913, at least two courts have not. *See Waybright*, 561 F. Supp. 2d 1154; *Hall*, 2008 WL 4307196. These courts analytically severed the inextricably linked, addressing SORNA's registration requirements separately from the federal enforcement provision. As explained in *Crum*:

> But while § 2250(a) 'includes an express and clear jurisdictional element,' *May*, 535 F.3d at 921, bringing it directly within the ambit of Congress's Commerce Clause authority, § 16913 contains no such jurisdictional trigger. Rather, § 16913 imposes a federal duty to register on all sex offenders regardless of whether they travel interstate. 42 U.S.C. § 16913(a), (c). For this reason, § 16913, when read in isolation, 'raises greater constitutional concern' than § 2250(a). *Hall*, 2008 WL 4307196, at *8. Most courts have simply addressed SORNA as a whole without analyzing separately the two statutory provisions. *See, e.g., May*, 535 F.3d at 921–22; *Ditomasso*, 552 F. Supp. 2d at 246; *Hinen*, 487 F. Supp. 2d at 758. The lack of distinction between the registration requirement and the enforcement mechanism indicates that these courts 'have treated 42 U.S.C. § 16913 and 18 U.S.C. § 2250(a) as interrelated components of the larger whole of SORNA sufficient to overcome any deficiencies when viewing § 16913 in isolation.' *Van Buren*, 2008 WL 3414012, at *12. But recently a few district courts have addressed the constitutionality of each provision separately. *See Hall*,

---

[7] Several courts have concluded that the criminal enforcement provision may pass muster under the first prong of *Lopez* as well. *See, e.g.*, *May*, 535 F.3d at 921–22; *Crum*, 2008 WL 4542408, at *8 n.2.

1
2
3
4
5

*2008 WL 4307196, at \*7-11; Hann, 2008 WL 4067542, at \*3-7; Van Buren, 2008 WL 3414012, at \*8-14; Waybright, 561 F. Supp. 2d at 1160-68; United States v. Thomas, 534 F. Supp. 2d 912, 916-22 (N.D. Iowa 2008). While Hall and Waybright have struck down § 16913 as unconstitutional under the Commerce Clause, Hann, Van Buren, and Thomas have upheld the statute. . . . [T]he Court follows the reasoning of the latter cases.*

6   2008 WL 4542408, at *9.  The better view is that SORNA survives a

7   Commerce Clause challenge.

8        First, a defendant's duty to register under SORNA is federally

9   regulated (i.e., federally enforceable) only when interstate travel

10  is involved — defendant's federal duty to register is intimately

11  connected with, not wholly separable from, the federal enforcement

12  provision.  "[V]irtually all of the courts that have addressed the

13  constitutionality of SORNA . . . have relied upon the nexus to

14  interstate travel required for § 2250(a) prosecution to support

15  Congress's authority to enact the legislation as a whole." *Van*

16  *Buren*, 2008 WL 3414012, at *12.   When viewing the registration

17  requirements and the federal enforcement provision together it

18  becomes clear that § 16913 and § 2250(a) are "components of a

19  symbiotic statutory scheme" in that § "2250(a) lacks all meaning

20  without reference to  § 16913, and § 16913 lacks all effect without

21  reference to § 2250(a)." *Crum*, 2008 WL 452408, at *9 (quotation

22  marks omitted).  These statutes must be analyzed together, and when

23  they are "the jurisdictional requirement of interstate travel

24  applicable  to  criminal  prosecution  brings  the  registration

25  requirements set forth in § 16913 under the umbrella of the Commerce

26  Clause." *United States v. Hann*, 574 F. Supp. 2d 827, 835 (M.D. Tenn.

27  2008).  "While Congress clearly intended to impose a duty on all

28

convicted sex offenders in its effort to develop a national registry, the fact that SORNA prosecutions are limited to those individuals who travel in interstate commerce evidences that Congress was acutely aware of the breadth of its power under the Commerce Clause when it enacted SORNA." *Crum*, 2008 WL 4542408, at *9 (quotation marks omitted).

Second, SORNA endeavors to address a problem of national importance which eludes a local solution bolstering its validity as an exercise of Congress's commerce power. "Congress was concerned with the possibility that then-existing sex offenders were slipping through the cracks of the disparate 50 state registration systems." *Roberts*, 2007 WL 2155750, at *2. SORNA's federalization of registration requirements seeks to "close the loopholes in previous sex offender registration legislation" and "prevent sex offenders from being lost to tracking efforts as they travel from state to state." *Ditomasso*, 552 F. Supp. 2d at 236, 244. "Courts have consistently recognized that federal statutes enacted to help states address problems that defy a local solution constitute an appropriate exercise of Congress's Commerce Clause power, because this power includes the authority to govern affairs which the individual states, with their limited territorial jurisdictions, are not fully capable of governing." *United States v. Reynard*, 473 F.3d 1008, 1023-34 (9th Cir. 2007) (quotation marks omitted). SORNA's registration requirements, as well as the federal enforcement provision, help "prevent[] sex offenders from being lost in the cracks between state regulations, a matter which is beyond the power of any one state to comprehensively address." *Robinson*, 2008 WL

37

4086474, at *5; *see also Van Buren*, 2008 WL 3414012, at *13.

Finally, numerous courts have found that the Necessary and Proper Clause supports the constitutionality of SORNA's registration requirements. *See, e.g., Crum,* 2008 WL 4542408*, at *10; Elmer*, 2008 WL 4369310, at *4 n.8; *Vardaro*, 575 F. Supp. 2d at 1187-88. Pursuant to the Necessary and Proper Clause, Congress can "make all Laws which shall be necessary and proper" for executing its other enumerated powers. U.S. CONST. art. I., § 8, cl. 18.  "In conjunction with the Commerce Clause, the Necessary and Proper Clause permits Congress to 'regulate even those intrastate activities that do not themselves substantially affect interstate commerce,' so long as the Congressional enactment is 'necessary to make a regulation of interstate commerce effective.'" *Shenandoah*, 572 F. Supp. 2d at 577 n.7 (*quoting Gonzales v. Raich*, 545 U.S. 1, 35 (2005) (Scalia, J., concurring)).  The means chosen to make a regulation of interstate commerce effective need not be narrowly tailored, but must be "reasonably adapted to the attainment of [that] end." *Gonzales*, 545 U.S. at 37 (quotation marks omitted). SORNA's registration requirements are "reasonably adapted to meet the Congressional purpose of monitoring [or regulating] sex offenders who transgress state lines and is authorized by the Necessary and Proper Clause." *Vardaro*, 575 F. Supp. 2d at 1187-88. Absent initial and continuing local registration, sex offenders undoubtedly would have an easier time going undetected when they travel in interstate commerce and knowingly fail to register thus impairing Congress's power to punish those offenders and impeding Congress's ability to ensure the channels of interstate commerce

38

remain free from injurious uses.

The provisions of 18 U.S.C. § 2250(a) and 42 U.S.C. § 16913 are constitutional under Congress's commerce power.[8]

### V. CONCLUSION

Based upon the foregoing, defendant's amended motion to dismiss the indictment is DENIED on all grounds.

IT IS SO ORDERED.

Dated:    November 19, 2008                    /s/ Oliver W. Wanger
                                        UNITED STATES DISTRICT JUDGE

---

[8] **To the extent defendant's attack on § 16913 can be classified as a facial overbreadth challenge, it must be rejected for a separate reason. Defendant has "not established that no set of circumstances exist under which § 16913(a) [or (c)] would be valid under the Commerce Clause."** *Vardaro*, **575 F. Supp. 2d at 1188. Based upon the reasoning rejecting defendant's challenge to the criminal enforcement provision, § 16913(a) or (c) "can be validly applied to him, given that [defendant] is alleged to have traveled in interstate commerce."** *Id.* **It remains doubtful whether a Commerce Clause facial overbreadth challenge is cognizable under contemporary jurisprudence.** *See id.* **at 1188-89.**